UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DAVID C. BALCERZAK,

Plaintiff,

v. Case No. 6:25-cv-1657-CAB

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

**ORDER**

This cause comes before the Court on Plaintiff David C. Balcerzak's appeal from a final decision from the Commissioner of Social Security denying his application for Supplemental Security Income ("SSI").[1] (Doc. 1). The undersigned has reviewed the record, the parties' memoranda (Docs. 13, 14, 15), and the applicable law. Upon due consideration, the Commissioner's decision will be reversed and remanded for further administrative proceedings.

# I. BACKGROUND

## A. Procedural History

Plaintiff applied for SSI on July 30, 2020, which is also Plaintiff's alleged disability onset date. (Tr. 153, 176). Plaintiff cited bipolar disorder, schizophrenia,

[1] The parties have consented to the undersigned's jurisdiction over this matter pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.

depression, agoraphobia, motor skill problems, obesity, and hypertension as the impairments underlying his application. (Tr. 468). This application was denied initially and upon reconsideration. (Tr. 153–65, 167–88). The Administrative Law Judge ("ALJ") held a hearing and, on December 16, 2021, issued an unfavorable decision. (Tr. 190–206). After the Appeals Council remanded the case, the ALJ held another hearing, and issued a second unfavorable decision on September 27, 2022. (Tr. 14–34, 211–17). The Appeals Council denied a second request for review. (Tr. 1–6). Then, on June 27, 2023, the district court granted an unopposed motion filed by the Commissioner seeking to remand the case. (Tr. 951–52). The Appeals Council remanded the case to a different ALJ. (Tr. 945–46). The ALJ held a hearing, at which Plaintiff and a vocational expert testified. (Tr. 910–44). Then, the ALJ issued a third unfavorable decision, which is at issue here. (Tr. 883–900). The Appeals Council denied Plaintiff's request for review on Plaintiff's exceptions. (Tr. 871–74).

**B. The ALJ's Decision**

The ALJ issued the unfavorable decision that is the subject of this action on May 31, 2024. (Tr. 883–900). In the decision, the ALJ evaluated Plaintiff's application using the five-step sequential evaluation process. (*See generally id.*); 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the date of his application. (Tr. 888). At step two, the ALJ found that Plaintiff had multiple severe impairments, including lumbar and cervical degenerative disc disease, carpal tunnel syndrome ("CTS"), obesity, hypertension, diabetes, headaches, depression, bipolar disorder, anxiety disorder, and substance use

disorder. (Tr. 889). However, at step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 889–91).

Accordingly, the ALJ considered Plaintiff's residual functional capacity ("RFC"). (Tr. 891–98). The ALJ concluded that:

> [Plaintiff] has the [RFC] to perform sedentary work as defined in 20 CFR [§] 416.967(a) which can be learned in 30 days with a General Education Development scale Reasoning level of 1, 2, or 3 in the DOT. He requires the use of a cane for ambulation. He can occasionally stoop, kneel, crouch, or crawl. He can never climb ladders, ropes, or scaffolds but can occasionally climb ramps or stairs. He should avoid exposure to hazards, such as heights or machinery with moving parts. He can frequently reach (including overhead) with the upper extremities. He can frequently handle and finger with the upper extremities. He cannot perform production rate pace work. He can have occasional changes in routine workplace setting and have occasional contact with co-workers, supervisors, and the general public.

(Tr. 891–92). Then, at step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (Tr. 898). Finally, at step five, the ALJ determined that, considering Plaintiff's age, education, work experience, and RFC, "there are jobs that exist in significant numbers in the national economy that [he] can perform." (Tr. 899 (citations omitted)). As a result, the ALJ concluded that Plaintiff is not disabled. (Tr. 900).

## II. STANDARD OF REVIEW

The Court's authority to conduct judicial review of the Commissioner's determinations is derived from 42 U.S.C. § 405(g). Under this provision, a finding of

fact made by the Commissioner is "conclusive" so long as it is "supported by substantial evidence." *Id.* "Substantial evidence is defined as more than a scintilla [of evidence.]" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam). It is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Thus, in conducting its review, the Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for the Commissioner's. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)); *see also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence."). Further, the Court must consider the record "as a whole," and must "tak[e] into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560 (quoting *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)). Finally, the Court reviews the Commissioner's legal conclusions *de novo*. *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002) (per curiam).

## III. DISCUSSION

In the instant appeal, Plaintiff contends that the ALJ failed to sufficiently consider the explanations offered by four treating medical providers when evaluating the persuasiveness of their opinions. (*See* Doc. 13). More specifically, Plaintiff argues the ALJ failed to adequately consider the supportability and consistency factors as to

these opinions. (*See id.*). Defendant, meanwhile, asserts that the ALJ's analysis of these opinions complied with the applicable law. (*See* Doc. 14). Because the Court agrees with Plaintiff that it must reverse and remand based upon the ALJ's assessment of the opinions offered by Plaintiff's neurologist, Gary Weiss, MD, the Court does not address Plaintiff's remaining arguments.[2]

### A. Applicable Law

The Social Security Administration has revised its regulations regarding the consideration of medical evidence as to all claims filed after March 27, 2017. *Brown v. Comm'r of Soc. Sec.*, No. 6:20-cv-840-GJK, 2021 WL 2917562, at *3 (M.D. Fla. July 12, 2021) (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 2017 WL 168819 (Jan. 18, 2017)); *see* 20 C.F.R. §§ 404.1520c, 416.920c. Plaintiff filed his application on or after March 27, 2017, and thus, the new regulations apply to this case.

Under the new regulations, when considering the persuasiveness of medical opinions and prior administrative medical findings, the ALJ "will not defer or give any specific evidentiary weight" thereto. § 404.1520c(a). Instead, the ALJ will consider such opinions or findings from a medical source together using the factors enumerated in paragraphs (c)(1) through (c)(5) of § 404.1520c. *Id.* These factors are comprised of:

---

2 *See, e.g.*, *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (noting that, on remand, the ALJ must reassess the entire record); *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 n.3 (11th Cir. 2015) (per curiam) (finding that, where a case is reversed due to a dispositive error, the court need not address the remaining issues in the case); *see also Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 (11th Cir. 2018) ("Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive.").

(1) the "[s]upportability" of the opinions or findings, (2) their "[c]onsistency" with the other record evidence, (3) the source's relationship with the claimant, (4) whether the source is a specialist with regard to the subject matter at issue, and (5) "other factors that tend to support or contradict" the opinion or finding. § 404.1520c(c)(1)–(5).

The ALJ must "articulate in [its] determination or decision how persuasive [it] find[s] all of the medical opinions and prior administrative findings in [a plaintiff's] case record" to be. § 404.1520c(b). Further, because supportability and consistency are the "most important factors" considered by the ALJ in assessing the persuasiveness of such opinions and findings, the ALJ is required to "explain how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings" in its determination or decision. § 404.1520c(b)(2). The ALJ may, but is not generally required to, explain how it considered the remaining factors in conducting this analysis. *Id.*

"Supportability" refers to the concept that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." § 404.1520c(c)(1). Further, "consistency" refers to the concept that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be. § 404.1520c(c)(2). "Put differently, the ALJ must analyze whether the medical source's

opinion is (1) supported by the source's own records, and (2) consistent with the other evidence of record." *Reckard v. Comm'r of Soc. Sec.*, No. 6:25-cv-1732-DCI, 2026 WL 1784813, at *2 (M.D. Fla. June 22, 2026) (quoting *Tocco v. Comm. of Soc. Sec.*, No. 8:21-cv-399-TPB-SPF, 2022 WL 3362863, at *7 (M.D. Fla. July 28, 2022), *report & recommendation adopted*, 2022 WL 3357665, at *1 (M.D. Fla. Aug. 15, 2022)).

**B. Dr. Weiss' Treatment of Plaintiff and Opinions**

Plaintiff began treating with neurologist Dr. Weiss' office on November 9, 2020, when Plaintiff had an office visit with Lana Meyer, APRN. (Tr. 768). Plaintiff reported a variety of complaints, including that he had longstanding problems using his hands for tasks to engage in fine movements such as writing or turning a screw, that he was "dropping things," and that he had bilateral "decreased grip strength" that was worse on the right side. (Tr. 768–69). Plaintiff also complained of weakness, numbness, and tingling in his upper extremities. (Tr. 769). Plaintiff reported that he had three to four headaches per week that caused "blurred vision, double vision, nausea, vomiting, dizziness, tinnitus, [and] light and sound sensitivity." (Tr. 768). He rated his headache pain as 6–8/10 on the pain scale and stated that he treated this pain by using an ice pack and lying in a dark room. (*Id.*). With regard to his cervical spine, Plaintiff reported "intermittent pain" that he rated as 6–7/10 on the pain scale. (Tr. 769). He also reported bilateral pain, weakness, numbness, and tingling in his feet, with the left being worse than the right. (*Id.*). As for his lumbar spine, Plaintiff reported lumbar pain that radiated into his legs, right greater than left, which he rated as 5–7/10 on the pain

scale. (*Id.*). Plaintiff also stated that his sleep was "poor," that he slept three to four hours per night, and that he was experiencing anxiety and depression. (*Id.*).

In her neurological exam, Nurse Meyer documented that Plaintiff's "gait and station" were abnormal and Plaintiff was limping on his left leg. (Tr. 771). Plaintiff reported his limp was due to gout, for which he was receiving treatment. (*Id.*). As for his motor functions, Nurse Meyer noted Plaintiff's "[s]trength is abnormal in right greater than left hand -3/4," but noted no evidence of atrophy or fasciculations. (*Id.*). Sensation in Plaintiff's extremities were intact. (*Id.*). Ultimately, Nurse Meyer assessed that Plaintiff had (1) a history of bipolar disease, (2) neck pain with numbness and tingling in his fingers, for which his providers should rule out herniated nucleus pulposus ("HNP") and CTS; (3) right upper extremities loss of function and for which his providers should rule out CTS and peripheral neuropathy; (4) mild cognitive changes, including trouble with short term recall and word finding; (5) "[p]ossible high level spectrum disorder," and (6) schizoaffective disorder, bipolar type. (Tr. 772).

That same day, Plaintiff underwent MRI imaging of his cervical spine, which revealed abnormal results, including a "moderately large HNP at C6–7." (Tr. 766). A few days later, on November 13, 2020, he underwent an MRI of the brain with normal results. (Tr. 773).

For the remainder of Plaintiff's visits[3] with Dr. Weiss' office, Plaintiff was seen by Dr. Weiss himself. (Tr. 758–62, 768–72, 824–29). At these visits, Plaintiff's

[3] Many of these visits were telehealth visits due to the COVID-19 pandemic. (*See* Tr. 758–62, 768–72, 824–29).

complaints and the neurological findings remained largely consistent with those from his initial visit. (*See generally id.*). Thus, the Court will set forth only the material developments as to the subsequent appointments. On November 16, 2020, Plaintiff had a follow up visit with Dr. Weiss. (Tr. 768–72). Dr. Weiss' treatment notes for this visit do not reflect any material changes to Plaintiff's condition. (*Id.*). On January 6, 2021, Plaintiff underwent a nerve conduction study, the results of which caused Dr. Weiss to diagnose Plaintiff with right CTS. (Tr. 782). Plaintiff had a follow up visit with Dr. Weiss the same day. (*See* Tr. 758–62). In his treatment notes for this visit, Dr. Weiss assessed Plaintiff as having, among other things, "[n]eck pain with moderately large HNP C6–7" and "[right upper extremity] loss of function – likely central cause primarily with co-existent CTS."[4] (Tr. 762).

In the treatment notes from a visit on February 8, 2021, Dr. Weiss documented Plaintiff's report that his podiatrist had recently diagnosed his foot pain as being caused by gout. (Tr. 824). Dr. Weiss also recorded Plaintiff's report that his "neck pain has gotten more severe." (Tr. 824). Dr. Weiss prescribed Plaintiff a new prescription for his neck pain and stated that Plaintiff "[w]ill likely need CTS release and cervical spine surgery as well once he has insurance." (Tr. 828). At a follow up visit on April 22, 2021, Dr. Weiss documented Plaintiff's report of "constant" bilateral pain in his feet and toes "with a numbing sensation." (Tr. 819). Plaintiff reported the pain as being

---

4 Here, Dr. Weiss appears to be conveying a belief that Plaintiff's HNP is the "likely central cause" of Plaintiff's right upper extremity "loss of function," but such a reading is not essential to the outcome of this matter.

10/10 on the pain scale. (Tr. 820). Dr. Weiss noted that Plaintiff "has not experienced any falls and denies using any assistive devices" except for "when he has a gout flare up." (*Id.*). Plaintiff also reported his "anxiety and depression are pretty high." (*Id.*). Dr. Weiss increased the dosage for Plaintiff's prescription of gabapentin. (Tr. 823). Dr. Weiss once again noted the likelihood Plaintiff would need surgery for his CTS and cervical spine "once he has insurance" and stated he would also do a workup for peripheral neuropathy at that time. (*Id.*).

Then, on September 14, 2021, Dr. Weiss filled out a Physical Restrictions Evaluation form (Tr. 810–13), wherein he opined that Plaintiff had significant physical limitations affecting his ability to work. In support of this opinion, Dr. Weiss cited Plaintiff's "low back pain, headaches, peripheral neuropathy, neck pain with HNPs 6–7 (moderately large), loss of function in right upper extremity, right [CTS], cognitive changes, high level spectrum disorder, [and] schizoaffective disorder, bipolar type." (Tr. 810). As to certain specified limitations, Dr. Weiss stated that Plaintiff's "[g]ait & station are abnormal – limping on left leg" and that his "strength is abnormal in right greater than left hand - 3/4." (Tr. 811–12).

### C. The ALJ's Assessment of Dr. Weiss' Opinions

The ALJ found Dr. Weiss' opinions were "not persuasive," stating:

> Dr. Weiss' extreme limitations are not reflected in his treatment notes. (Exhibits 8-F, 9-F, and 13-F) The opinion is not consistent with other evidence; no other source has identified this specific, extreme degree of limitation. He was not in acute distress at appointments, which is inconsistent with the alleged severity and frequency of pain. (Exhibit 5-F, page 2; 10-F, pages 3, 19) Romberg testing was negative, and the claimant denied

> stumbling or falling. (Exhibit 6-F, page 4; 8-F, pages 4, 10, 13) Sensation was intact in all extremities. (Exhibit 6-F, page 4; 8-F, page 6) The claimant's treatment for physical impairments has been conservative in nature.

(Tr. 895).[5]

Plaintiff argues that the ALJ's analysis in weighing Dr. Weiss' opinion is fatally flawed. (Doc. 13 at 22–24). The Court begins by considering any statements that could be relevant to the "consistency" factor, which requires the ALJ to assess whether a medical source's opinion is "consistent with other evidence of record" in determining the weight to afford the opinion. *Reckard*, 2026 WL 1784813, at *2. The ALJ can, at most, be said to have devoted three sentences relevant to the consistency factor[6] in weighing Dr. Weiss' opinion, which the Court will address in turn.

First, the ALJ states that "no other source has identified th[e] specific, extreme degree of limitation" found by Dr. Weiss. (Tr. 895). Plaintiff contends that, in fact, an additional treating neurologist, Leslie Huszar, MD, provided such opinions. (Doc. 13 at 24). For its part, Defendant asserts that there are "significant differences" between the two opinions. (Doc. 14 at 17). The Court agrees with Plaintiff and finds that the ALJ's statement is not supported by the substantial evidence. *See Foote*, 67 F.3d at 1560.

---

5 For clarity, the ALJ's citations to Exhibits 6-F, 8-F, 9-F, and 13-F all refer to Dr. Weiss' treatment records. (*See* Tr. 758–62; 766–782; 818–829). The citations to Exhibits 5-F and 10-F refer to other providers' treatment records, which are identified using citations to the transcript for the instant appeal and are discussed in more detail *infra*.

6 The remaining statements in the ALJ's analysis cite to Dr. Weiss' own records and thus pertain to supportability, or the extent to which Dr. Weiss' opinion is "supported by [his] own records." *Reckard*, 2026 WL 1784813, at *2.

Dr. Huszar's opinions describe Plaintiff's limitations in ways that are, in most respects, identical to those described by Dr. Weiss and, in certain other respects, even more debilitating. (*Compare* Tr. 810–13, *with* Tr. 1226–29). Both providers agree that Plaintiff should "never" climb, stoop, crouch, kneel, or crawl. (Tr. 810, 1226). They also agree that Plaintiff can only sit for fifteen to thirty minutes and stand or walk for five to ten minutes without interruption. (*Id.*). However, while Dr. Weiss opined that Plaintiff could balance "[o]ccasionally," Dr. Huszar stated that he could "[n]ever" do so. (Tr. 811, 1228). Further, though Dr. Weiss opined that Plaintiff must lie down or recline three hours per day, Dr. Huszar stated that he should do so for five hours per day. (Tr. 810, 1226). Additionally, while Dr. Weiss opined Plaintiff had no impairments affecting his vision, hearing, or speaking, Dr. Huszar stated that he was limited in all three areas due to his hallucinations. (Tr. 812, 1228).

Despite the foregoing, the ALJ does not acknowledge or otherwise attempt to distinguish Dr. Huszar's opinion when broadly stating that "no other source has identified this specific, extreme degree of limitation." (Tr. 895). Courts in this District have found that similarly generic statements that are provided by the ALJ without further explanation do not suffice to address the supportability and consistency factors, even when they are paired with citations to the record. *See Flores v. Comm'r of Soc. Sec.*, No. 6:21-cv-16-LHP, 2022 WL 11363664, at *5 (M.D. Fla. July 5, 2022) (collecting cases); *see also Pierson v. Comm'r of Soc. Sec.*, No. 6:19-cv-01515-RBD-DCI, 2020 WL 1957597, at *4 (M.D. Fla. Apr. 8, 2020) ("[C]onclusory statements by the ALJ that an examining physician's opinion is inconsistent with the medical record 'are insufficient

to show an ALJ's decision is supported by substantial evidence unless the ALJ articulates factual support for such a conclusion.'" (citation omitted)). More fundamentally here, the ALJ's failure to acknowledge or address the materially similar opinion of Dr. Huszar directly calls into question his assertion that no other source identified such limitations.

In support of the ALJ's statement, Defendant points to minor discrepancies in the opinions, such as Dr. Weiss' opinion that Plaintiff can lift five pounds "occasionally," compared with Dr. Huszar's opinion that he can lift five pounds "occasionally" and two pounds "frequently." (Doc. 14 at 17; Tr. 811, 1227). This provides no more than a "scintilla" of support for the ALJ's finding. *Foote*, 67 F.3d at 1560. Under the circumstances, the Court finds that the ALJ's statement is not supported by the substantial evidence. *See id.*; (Tr. 895).

The second statement by the ALJ that is relevant to the consistency factor, and that is equally relevant to supportability, is the ALJ's statement that Plaintiff's treatment has been "conservative in nature."[7] (Tr. 895). Plaintiff argues this statement wholly ignores his testimony that he lacked insurance and that, while surgery was recommended to him, it was "not an option because of the price." (Doc. 13 at 24; Tr. 915, 919). This fact is recorded in Dr. Weiss' treatment plan for more than one appointment, wherein Dr. Weiss noted that Plaintiff would likely need to both

[7] The ALJ fails to cite to the record after making this general statement, which would clarify whether he intended to address supportability, consistency, or both. (Tr. 895). The Court assumes that the ALJ is referring to Plaintiff's treatment broadly, whether provided by Dr. Weiss or Plaintiff's other medical providers.

undergo surgery for his CTS as well as cervical spine surgery "once he has insurance." (Tr. 823 (April 2021 appointment), 828 (February 2021 appointment)). Defendant neglects to address this argument in its response. (Doc. 14 at 15–17; *see* Doc. 12 at 4 (ordering that legal or factual responses to a claim that are not adequately supported in the response brief are "deemed waived")). The Court cannot discern from the ALJ's statement regarding conservative treatment whether he failed to appreciate that Plaintiff's financial limitations were the reason his treatment was conservative or whether he affirmatively disagreed that surgery would be necessary. (*See* Tr. 895). In either scenario, the Court finds the ALJ's failure to mention Plaintiff's recommended surgery to be significant, particularly when considered in the context of the ALJ's broader decision. *See Foote*, 67 F.3d at 1560 (noting the court must consider the record "as a whole" in assessing social security appeals (quoting *Chester*, 792 F.2d at 131)).

In conducting its RFC analysis, the ALJ expressly determined that Plaintiff's cervical and lumbar spine pathology and CTS both resulted in functional limitations. (Tr. 894). Indeed, the ALJ expressly accounted for those limitations by including corresponding restrictions in the RFC. (*Id.* (noting that he included "[t]he restriction to sedentary exertion work with limitations on climbing and postural restrictions . . . in the [RFC] based in part on" the abnormal findings in Plaintiff's April 2024 cervical and lumbar spine MRI and that he additionally "included some limitations on handling[] and fingering based on claimant's [CTS].")). In other words, the ALJ acknowledged that Plaintiff's spinal impairments and CTS affected his ability to work. (*Id.*). The ALJ simply disagreed with Drs. Weiss and Huszar as to the severity of those

impairments and whether they imposed limitations of a degree that would wholly preclude Plaintiff from working. (*See id.*). Yet, in finding the opinion of Dr. Weiss "not persuasive," the ALJ expressly relied upon the incorrect premise that Plaintiff only required conservative treatment for these conditions. (Tr. 895).

Assuming the ALJ failed to appreciate that surgery had been recommended, the Court cannot determine whether that fact would have affected either the ALJ's conclusion that Dr. Weiss' opinion was "not persuasive" or his assessment of the severity of Plaintiff's neurological impairments. (*See id.*). On the other hand, if the ALJ simply disagreed that surgery was necessary, the ALJ declined to address this finding in a way that would allow the Court to review his reasoning. (*See id.*). In either case, reversal is mandated. *See Hanna v. Astrue*, 395 F. App'x 634, 636 (11th Cir. 2010) (per curiam) (noting that "[t]he ALJ must state the grounds for his decision with clarity to enable [the Court] to conduct meaningful review," and reversing the ALJ's decision on this basis); *Pierson*, 2020 WL 1957597, at *4 (explaining the court cannot "guess" at the bases supporting an ALJ's determination without "impermissibly reweigh[ing] the evidence" (citing *Dyer v. Barnhart*, 395 F. 3d 1206, 1210 (11th Cir. 2005))); *Chesal v. Bisignano*, No. 24-61087-CIV-SANCHEZ, 2025 WL 2884881, at *3 (S.D. Fla. Sept. 29, 2025) ("Indeed, an ALJ's 'failure to apply the correct law or provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." (quoting *Ingram v. Comm'r of Soc. Sec.*, 496 F.2d 1253, 1260 (11th Cir. 2007))).

Finally, the last statement cited by the ALJ in support of the consistency factor is that Plaintiff "was not in acute distress at appointments, which is inconsistent with the alleged severity and frequency of pain." (Tr. 895). In support, the ALJ cited the medical records from three such appointments. (*Id.* (citing Tr. 754, 785, 801)).

First, in a November 10, 2020, visit to the Emergency Department for lower extremity pain, Plaintiff's provider documented that during his physical exam he was "[A]lert. Oriented x3. No acute distress." (Tr. 754). Under "Extremities," the provider noted, "[r]ight great toe: moderate tenderness and swelling; limited movement secondary to pain and weakness (diminished flexion and extension)." (*Id.*). Plaintiff was ultimately diagnosed with "[a]cute nontraumatic pain in the left lower extremity (foot)," noting "clinical correlation with Hallux rigidis." (Tr. 755).

Second, on May 3, 2021, Kristine Zonka, NP with Health First Medical Group noted Plaintiff presented with "multiple medical complaints," including "gouty pain of the left great toe x4 days," which he described as "constant, burning, aggravated by walking and not alleviated by anything." (Tr. 800). However, in the notes from her physical exam, Nurse Zonka documented that Plaintiff was in "no acute distress." (Tr. 801). Finally, in a follow up visit with Sara Switzer, MD of Health First Medical Group on May 10, 2021, Dr. Switzer noted that, upon physical exam, Plaintiff exhibited "no acute distress." (*Id.*). Dr. Switzer then assessed Plaintiff as having (1) anxiety, (2) hyperglycemia, (3) schizophrenia, (4) idiopathic peripheral neuropathy, and (5) depressed bipolar I disorder. (Tr. 786).

"[C]ourts have found that a physician's notation of 'acute distress' refers to a patient who is in a state of emergency." *Bevis v. Comm'r of Soc. Sec.*, 552 F. Supp. 3d 1266, 1275 (M.D. Fla. 2021) (citation omitted). "'Acute' refers to a disease, health effect, or symptom having a sudden, abrupt onset and a short, but severe, course, as opposed to a chronic condition or symptom having a slow development and a protracted but mild course." *Id.* (quoting *Wanserski v. Colvin*, No. 1:14-CV-1033-DKL-JMS, 2015 WL 5692521, at *7 (S.D. Ind. Sept. 28, 2015)). Thus, "[t]o physicians, 'No Acute Distress' means that your patient will probably not become unstable in the next 5 minutes." *Id.* (quoting *Wanserski*, 2015 WL 5692521, at *7).

The ALJ fails to explain the connection between Plaintiff's lack of acute distress at these three visits and the conclusion he draws that these findings are "inconsistent with the alleged severity and frequency of pain." (Tr. 895). Indeed, the records from the providers at two of the three visits cited by the ALJ in support of this statement recorded that Plaintiff was in active pain at the time. (Tr. 754, 800–01). Although there may very well be an explanation as to how the absence of acute distress bears upon the presence or severity of pain, such an explanation is not provided by the ALJ here. (*See* Tr. 895). The Court thus determines that the ALJ failed to build the requisite "accurate and logical bridge from the evidence to [his] conclusion" with regard to this finding. *Pierson*, 2020 WL 1957597, at *4 (quoting *Flentroy-Tennant v. Astrue*, No. 3:07-cv-101-J-TEM, 2008 WL 876961, *8 (M.D. Fla. Mar. 27, 2008)); *see also Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (explaining that the court does not "act as [an] automaton[]" when reviewing social security determinations and "[m]ust

scrutinize the record as a whole to determine if a decision reached is reasonable and supported by substantial evidence." (citations omitted)). As a result of the foregoing, the Court finds that the ALJ has inadequately assessed the consistency factor in weighing Dr. Weiss' opinions, requiring reversal. *See Pierson*, 2020 WL 1957597, at *4.

## IV. CONCLUSION

The Court finds that the ALJ failed to adequately consider the consistency factor in weighing the opinions of at least one of Plaintiff's treating physicians. Accordingly, it is **ORDERED** that:

1. The final decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).
2. The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff and against the Commissioner and to thereafter close the file.

**DONE** and **ORDERED** in Orlando, Florida on September 28, 2026.

Chauncey A. Bratt
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties